## George W. Grove *v.* J. L. Roberts, Assignee, &c.

At common law, where a party has received paper as collateral security, he may excuse himself from liability for the failure to collect, upon showing the insolvency of the parties bound by the collateral paper or the inutility of suit; the rule being that the pledgee is liable only for the damages sustained by the pledgor.

APPEAL from the District Court of Madison, *Richardson*, J. *J. B. Bemiss*, for plaintiff. *Stacey* and *Sparrow*, for defendant. The judgment of the court was pronounced by

Slidell, J. In March, 1840, *J. B. Coleman* brought suit against *Grove* upon a note of $7000, due in 1839, made by *Grove* to the order of and endorsed by *Harris* and *Lape*. In November, 1840, *Grove* filed an answer, accompanied by his affidavit, in which he alleged that *Coleman* was not the owner of the note, but that it belonged to *Harris* and *Lape*, or *William Lape*, one of that firm, and that he had an offset against them in the form of a judgment obtained against them in Mississippi and held by him. Interrogatories for the purpose of establishing this defence were propounded to *Coleman*. The cause was continued until May, 1843, when, with the consent of *Grove*, a supplemental petition was filed by *Coleman*, in which he states that pending the suit the note had been transferred to the assignees of the Bank of the United States, and asked leave to prosecute the cause for their use. At the same term of the court the cause was brought to trial, the defendant dispensed the plaintiff from answering the interrogatories; no evidence whatever was offered in support of the defence, and judgment was entered in favor of *Coleman* for the use of the bank's assignees for the full amount of the note and interest, with mortgage upon certain slaves.

No action appears to have been taken by the assignees on this judgment until the year 1848, when they seized the slaves under *fieri facias ;* and thereupon

*Grove* brought the present action, and obtained an order of injunction upon the ground that he was entitled to have various sums credited upon the judgment. He was unsuccessful in the court below, and has appealed.

The first credit claimed is for an amount of $905 75. This sum was paid in New Orleans on the 28th of May, 1840, by *Reynolds, Byrne & Co.*, the factors of *Grove*, to the Merchants' Bank, as agent of the Bank of the United States, and a receipt was given in the following words: "Received, New Orleans, 28th of May, 1840, from *Messrs. Reynolds, Byrne & Co.*, the sum of nine hundred and five dollars and seventy-five cents, on account of *G. W. Grove*. (Signed,) R. COPLAND, Assistant Cashier of the Merchants' Bank."

The receipts contains no imputation of payment, and no parol evidence has been adduced to show what was said or agreed upon at the time of payment. We must look, therefore, to the contemporaneous circumstances and subsequent facts for a solution of the contest between the parties. *Grove* insists that the payment should be imputed to the note and judgment for $7000. The assignees contended, successfully, in the court below, that the imputation should be made to a judgment obtained in Mississippi by *Briggs, Lacoste & Co.* against *Grove*, for $3892 56; upon which judgment *Briggs, Lacoste & Co.* obtained a decree in this State, rendering it executory in 1839. They issued an execution upon it in February, 1840, which was returned *nulla bona* on the 24th of April, 1840. On the 29th April, 1840, if not earlier, this judgment was transferred by *Briggs, Lacoste & Co.* to the Bank of the United States.

It does not appear from the evidence whether the Bank of the United States held the note of $7000 on the 28th of May, 1840, when the payment for account of *Grove* was made; and the uncertainty in which this matter is left, would be a sufficient reason for not disturbing the imputation made by the district judge to the *Lacoste* judgment, which was unquestionably held by the bank at that time. Besides, the conduct of *Grove* in the defence of the suit brought by *Coleman* upon the note of $7000, is inconsistent with his present pretensions. He asserted, as we have seen, in his answer and affidavit in 1842, that the note belonged to *Harris* and *Lape*. The only offset he then urged was a judgment held against them. When, in 1843, the transfer of the note to the assignees of the bank was disclosed, he was still silent as to the credit now claimed; abandoned any further resistance to the demand, and permitted judgment to go for the entire amount of the note and interest.

Another credit claimed in the petition for injunction was the amount of a judgment held by *Grove* against *Harris* and *Lape*, for $2394 37. This credit was also refused by the district judge, who held that it should be imputed to the *Lacoste* judgment. In this opinion we concur. A witness produced by *Grove* proves that there probably had once been an understanding between *Grove* and the bank, or its assignees, to allow the credit in question upon the *Coleman* claim. But this witness deposes, that at or about the time the judgment in the suit of *Coleman* v. *Grove* was obtained, *Grove* consented that the credit to which he might be entitled on account of the *Lape* and *Harris* debt, should be imputed upon the judgment of *Briggs, Lacoste & Co.* against him, which had been transferred to the bank. The trustees, whose counsel the witness was, had agreed to extend the time of payment of both claims in case he, *Grove*, would secure the payment of the *Briggs, Lacoste & Co.* judgment, which was not then secured. It was to avoid the trouble of giving that security that the above agreement was made. The testimony of this witness is not contradicted, and,

on the contrary, is sustained by the other evidence in the cause. It harmonizes with the acts of *Grove*, as shown by the record of the *Coleman* case. After that suit had been in prosecution nearly three years, *Grove* is found assenting to the amendment of the pleadings, and the appearance of the assignees as plaintiff in the cause, abandoning the defence previously pleaded, and suffering judgment to go in favor of the assignees for the entire claim. On their part, the assignees do not issue execution until a long interval has elapsed.

The next question for our consideration is, whether the district judge properly refused to charge the assignees with the balance, or any part of the balance, due upon a note of *Walker* endorsed by *Payne* and *Pinkard*, which appears to have come into the hands of the bank as a collateral security for the judgment in the case of *Briggs, Lacoste & Co.* v. *Grove*. At the trial, it appeared that the assignees had endeavored to collect it amicably, but without success. They did not bring suit upon it, and were unable to produce it at the trial, it having been lost or mislaid after being placed in the hands of their attorney. The evidence satisfied the mind of the district judge, that in consequence of the insolvency of the parties, (two of them were discharged in bankruptcy in 1841 and 1842, and the other name was unavailable down to the time of the trial,) suits against any of them would have been a fruitless expense, and that the claim was worthless.

The contract of pledge was made in Mississippi. We understand the rule of the common law in such a case to be, that the measure of damages for not putting the note in suit, supposing that the bank was under an express or implied agreement to do so, would be the injury sustained by the pledgor, and that the pledgee may excuse himself by showing the insolvency of the parties to the instrument. Upon payment of his debt, the pledgor would have a right to receive the note pledged, and upon refusal would have his action of trover. In that action, a bailee, not in bad faith, may show, in reduction of damages, the insolvency of the maker.

If the district judge had thought that it was still of some importance to *Grove* to get back the note, and had assessed some portion of its amount as damages for the failure to bring it into court to be delivered to him on his paying the creditor, we would not have been disposed to reverse such a decree. But as he virtually declared by his judgment that it was utterly worthless, and as *Grove*, by his long silence, may be supposed to have regarded the matter in the same light, we do not feel authorized to disturb the judgment.

There was an application for a new trial, which we think was properly refused by the district judge. The plaintiff was notified by the special plea of the defendants that they relied upon an agreement respecting the imputation of the judgment against *Lape* and *Harris*; he did not show in his affidavit for a new trial, unsuccessful diligence to obtain the testimony of the witnesses named in the affidavit, nor had he made an application for continuance.

Judgment affirmed, with costs.